UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GROQ, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>GROQ HEALTH, INC.,<br><br>and<br><br>FLORENCE D. COMITE, M.D.<br><br>        Defendants. | Case No.  1:23-cv-8325<br><br>**ORIGINAL COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff Groq, Inc. ("Groq"), by and through its attorneys, Allen & Overy LLP, as and for its Complaint against Defendants Groq Health, Inc. ("Groq Health") and Florence D. Comite, M.D., alleges as follows:

### I.    NATURE OF THE ACTION

1. This action for trademark infringement, false designation of origin, false advertising, trademark dilution, violation of consumer protection laws, and unfair competition under federal, state, and common laws arises out of Defendants' intentional adoption and unauthorized use of Plaintiff's registered and common law trademarks in connection with the marketing, advertising, promotion, offering for sale, and/or sale of Defendants' mobile app and related health services.

2. In 2016, Jonathan Ross adopted a unique name for his technology company: Groq, Inc. The word "Groq" essentially did not exist before Ross created it and has no known meaning in any language beyond its intended association with Groq, Inc.

3. Upon information and belief, in or around 2018, approximately two years after Mr. Ross founded Groq, Inc., Defendant Florence Comite M.D. founded a company named Quantiome, Inc. ("Quantiome"), which developed a precision medicine

1

application intended to provide personalized recommendations to quantify and optimize health. Approximately three years after founding Quantiome (and thus about five years after Mr. Ross founded Groq, Inc.), Dr. Comite began to refer to Quantiome as "Groq Health."

4. Defendants Groq Health, Inc. and Dr. Comite adopted a deliberately confusing name when Quantiome began doing business as Groq Health. Because the word "Groq" has no other meaning, consumers will believe that Groq Health, a health technology company, is affiliated with Groq, which offers a powerful technology solution to customers across multiple verticals, including in the health and science sector.

5. Defendants Groq Health and/or Dr. Comite knowingly used the Groq name and marks to benefit from the goodwill and reputation that Groq, Inc. earned.

6. Defendants' infringement actions will continue unless stopped. Hence, Groq brings this action for infringement of Groq's federally-registered trademarks under Section 32 of the Lanham Act, 15 U.S.C. § 1114, for false designation of origin, false advertising, and federal trademark dilution under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for trademark infringement and unfair competition under the laws of New York and common law, for violation of the New York Consumer Protection Act under New York General Business law §§ 349-350, and for injury to business reputation and trademark dilution under New York General Business Law § 360-1, *et seq.*, all arising from the Defendants' unauthorized use of the GROQ Mark in connection with the marketing, advertising, promotion, offering for sale, and/or sale of Defendants' mobile app and related health services.

## II.    PARTIES

7. Plaintiff Groq, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 400 Castro Street, Suite 600, Mountain View, California 94041.

8. Upon information and belief, Defendant Groq Health, Inc. is a corporation organized under the laws of the State of Delaware, with a place of business located at 150 Central Park South, Floor 2, New York, NY 10019, and a place of business located at 2513 E. Charleston Rd., Suite 102, Mountain View, CA 94303.

9. Upon information and belief, Defendant Florence D. Comite, M.D., is an individual residing at 200 E 66th Street A1706, New York, NY 10065.

### III.   JURISDICTION AND VENUE

10. This Court has original jurisdiction over this action pursuant to 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331 and 1338 and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

11. This Court has personal jurisdiction over Groq Health because Groq Health has its principal place of business within the State of New York and has committed trademark infringement in the State of New York. This Court has personal jurisdiction over Dr. Comite because Dr. Comite resides in the State of New York.

12. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2). Groq Health is located in this District and does business in this District, and a substantial part of the events giving rise to the claims in this case occurred in this District.

### FACTUAL ALLEGATIONS

#### A.   Plaintiff Groq and Its History of Innovation

13. Groq, Inc. was founded by its CEO and board member, Jonathan Ross. Groq is the innovator of the novel Tensor Streaming Processor compute architecture, accelerating workloads in Artificial Intelligence ("AI"), Machine Learning ("ML"), and High-Performance Computing ("HPC") through their product portfolio ranging from GroqChip™ to GroqRack™.

14. Long before the world started having human-like conversations driven by AI technology, Mr. Ross recognized that AI and related technologies, such as machine learning, would transform the way that people live, work, and interact with technology.

15. Mr. Ross recognized that harnessing the power of AI required not just better software, but also better hardware. Just as high-speed bullet trains cannot run on existing train tracks and require a network of custom-built tracks to operate, AI and related technologies run poorly on traditional computing platforms and require new custom-built technology platforms to run efficiently.

16. Prior to founding Groq, while working at Google, Mr. Ross began what became Google's Tensor Processing Unit (TPU) as a 20% project where he designed and implemented the core elements of the first generation TPU chip, a chip designed to accelerate compute-intensive tasks and to power AI-related computer tasks.

17. After designing the first TPU at Google, Mr. Ross was concerned about the barrier to entry for others, and he wanted to create the opportunity for anyone to join in the AI economy. Mr. Ross believed it was important for a broad range of businesses and individuals to be able to access and deploy these advanced technologies regardless of their industry, size, or location.

18. In September 2016, Mr. Ross founded the new company to pursue his vision of empowering its customers and partners with the most advanced and accessible computing platform for AI, ML, and HPC. He created a new name for this innovative company: **"Groq."**

19. The term "Groq" is a play on the word "grok," a word coined by Robert A. Heinlein in his 1961 science fiction novel "Stranger in a Strange Land." Mr. Ross changed the spelling of the word to ensure that his company's name was unique.

20. The word "Groq" has no meaning in English and no known meaning in any foreign language.

21. Groq develops and sells specialized chips and software for AI applications, such as computer vision, natural language processing, and recommendation systems. Groq's chips are designed to offer high performance, low latency, and energy efficiency for various AI workloads, such as inference and training. Groq's software platform

enables developers to program and optimize their AI models for Groq's chips using proprietary Groq compiler technology.

22. Groq's customers and applications span a wide range of markets, including finance, industrial automation, cybersecurity, health, and scientific research for the leading government labs. Groq's innovative deterministic single-core streaming architecture lays the foundation for Groq compiler's unique ability to predict precisely the performance and compute time for any given workload. The result is uncompromised low latency and performance, delivering real-time AI and HPC.

23. Groq has raised over $360 million through multiple rounds of funding and achieved a "unicorn" valuation of over $1 billion. The new and innovative technology developed by Groq is now publicly recognized as revolutionary.

### B.     Plaintiff's Trademarks

24. Since at least the time of its incorporation, Plaintiff Groq has been using and continues to use "GROQ" in commerce throughout the United States in connection with the distribution, provision, offering for sale, marketing, advertising, and promotion of Groq's products and technology platforms that accelerate computing. Groq also has been using, and continues to use the marks "GroqChip," "GroqNode," and "GroqRack" in commerce throughout the United States in connection with its products. Groq's continued use of these marks provides it with strong common law rights.

25. Groq engaged the law firm Fenwick & West LLP ("Fenwick") as its trademark attorney to represent Groq in trademark matters. Fenwick began representing Groq in its trademark application for "GROQ" no later than June 28, 2018.

26. In addition to its common law rights, Groq also owns valid, duly registered, subsisting, uncancelled, and unrevoked registrations in the U.S. Patent and Trademark Office ("USPTO") for the following marks:

| Mark | Reg. / App. No. | Reg. / App. Date | Services/Goods |
|---|---|---|---|
| GROQ | 6623378 | 2022-01-18 | Application programming interface (API) for software development in the fields of artificial intelligence, deep learning, machine learning, neural networks, high performance computing, and distributed computing systems; application programming interface (API) for use in building software applications; computer hardware and software for use in artificial intelligence applications and computer vision; software for use as an application programming interface (API); software for use on electronic devices, namely, software development kit consisting of software development tools for the development of content and services delivered across global computer networks; application development software programs; deep learning accelerate cards in the nature of deep learning computer hardware; computer hardware for artificial intelligence and machine learning technology; software and computer hardware for artificial intelligence, machine learning, deep learning, natural language generation, statistical learning, supervised learning, un-supervised learning, data mining, predictive analytics and business intelligence; software and hardware for use in managing and operating data centers and data storage; software development kits (SDKs); software development tools; software for artificial intelligence and machine learning; software for artificial intelligence, machine learning, deep learning, natural language generation, statistical learning, supervised learning, un-supervised learning, data mining, predictive analytics and business intelligence; system-on-chip processors; tensor computing processors; tensor processing units (TPUs). FIRST USE: 2021-03-24. FIRST USE IN COMMERCE: 2021-03-24 |
| GROQ | 5813964 | 2019-07-23 | Design, research and development of computer hardware |

6

27. Additionally, Groq has the following trademark applications pending in front of the USPTO:

| Mark | Serial. No. | App. Date | Services/Goods |
|---|---|---|---|
| GROQHEALTH | 97683439 | 2022-11-18 | Platform-as-a-Service ("PaaS") and Software-as-a-Service ("SaaS"), namely, providing medical professionals access to patient's health history, medications, current and past health status, and medical information on diseases, disease management, and prognoses for care; PaaS and SaaS that allows users to review machine learning-assisted predictive analysis of medical or prescription outcomes for patients; PaaS and SaaS that provides users with information relating to the interactions between diseases, infirmities, prescribed and potential medications, and specific patient information to determine proper diagnoses, prognoses, and treatment options for patients |
| GROQ LPU | 98037833 | 2023-06-12 | Computer hardware featuring linear algebraic accelerators implemented on a semiconductor chip or collection of semiconductor chips to process transformers based in artificial or machine learning models; Integrated circuit modules; integrated circuit cards and components and manuals associated therewith |
| GROQ LPU | 98037841 | 2023-06-12 | Platform as a service (PaaS) featuring computer platforms for natural language processing, machine learning, voice command and recognition, converting speech to text, data analytics, and artificial intelligence; Platform as a service (PaaS) featuring linear algebraic |

| | | | |
|---|---|---|---|
| | | | accelerators implemented on a semiconductor chip or collection of semiconductor chips to process transformers based in artificial or machine learning models |
| GROQ LANGUAGE PROCESSING ACCELERATION | 98037844 | 2023-06-12 | Computer hardware featuring linear algebraic accelerators implemented on a semiconductor chip or collection of semiconductor chips to process transformers based in artificial or machine learning models; Integrated circuit modules; integrated circuit cards and components and manuals associated therewith |
| GROQ LANGUAGE PROCESSING ACCELERATION | 98037847 | 2023-06-12 | Platform as a service (PaaS) featuring computer platforms for natural language processing, machine learning, voice command and recognition, converting speech to text, data analytics, and artificial intelligence; Platform as a service (PaaS) featuring linear algebraic accelerators implemented on a semiconductor chip or collection of semiconductor chips to process transformers based in artificial or machine learning models |

28. Groq has and continues to zealously protect its brand through filing and prosecution of its trademark applications, continued use, and vigilant enforcement of its registered and common law marks (collectively, the "GROQ Marks"), including but not limited through a trademark opposition filed on August 18, 2023.

29. Groq promotes and provides its services under the GROQ Marks on its websites including https://groq.com. It also promotes its brand on Twitter under the handles @GroqInc, on Facebook under the name @GroqInc; on Instagram under the name @GroqInc; and on LinkedIn at https://www.linkedin.com/company/groq/.

30. Groq has made significant investments to develop its brand identity, including through community outreach programs and national advertising campaigns.

8

31. Through these campaigns, and since at least November 30, 2017, Groq has prominently identified itself simply as Groq (in addition to using the GROQ Marks) to promote its consumer services.

32. Based on its federal trademark registrations as well as its common law rights, Groq owns the exclusive rights to use the Groq Marks in commerce in connection with the goods and services covered by the registrations.

    C.    **Groq Health's Infringing Branding**

33. Upon information and belief, in or around 2018, approximately two years after Mr. Ross founded Groq, Defendant Florence Comite M.D. founded a company named Quantiome, Inc. ("Quantiome"), which developed a precision medicine application intended to provide personalized recommendations to *quantify* and optimize patient health.

34. Upon information and belief, Quantiome established an office in Mountain View, California, mere miles from Groq's principal office in the same city.

35. Upon information and belief, Quantiome, Inc., n/k/a Groq Health, Inc., The Comite Center for Precision Medicine & Health, and/or Dr. Comite also engaged Fenwick, Groq's trademark counsel, as its counsel for various matters. In 2018, Fenwick attorneys incorporated QuantioMe in Delaware and registered it to do business in New York and California. Fenwick attorneys also filed an application to register a word mark for QUANTIOME in February 2018.

36. At all relevant times, Groq maintained an office in the same building occupied by Fenwick. Fenwick's Silicon Valley office visitors could see signs for both Groq and Fenwick. Dr. Comite maintained office(s) for one or more businesses in or around Fenwick's Silicon Valley office and, upon information and belief, saw Groq's signage.



37. In or around 2020, after Groq had already achieved a strong reputation in the market, Dr. Comite began to rebrand Quantiome as "Groq Health." A December 22, 2020 snapshot of www.groqhealth.com shows Groq Health encouraging consumers to "GROQ your health data!" While the "Quanti" portion of the name Quantiome suggest to its customers the services provided by Quantiome are intended to *quantify* and optimize health, the word "Groq" has no known meaning in any language beyond its intended association with Groq.

38. Defendants Groq Health, Inc. and Dr. Comite adopted a deliberately confusing name when Quantiome began doing business as Groq Health.

39. Defendants knowingly used the Groq name and marks to benefit from the goodwill and reputation in the field of AI that Groq built, at a time when Groq Health is rebranding itself as a leader in AI:

      a.     A December 4, 2021 capture of its website boasts, "With our groundbreaking AI, we can help you reverse the signs and symptoms of aging and prevent disease before it strikes."[1] This statement remains on its webpage today.[2]

      b.     A January 2021 archive of the Groq Health boasts, "The Center's protocols, clinical database, extensive in-depth analysis, and pattern recognition are the backbone of GROQ Health's robust AI."[3]

      c.     Groq Health's current website also states, "GROQ Health is the first and only app with AI clinically proven to help users reverse signs and symptoms of aging, lose weight, and achieve peak fitness through precision medicine."[4]

      d.     Groq Health also boasts, "GROQ's AI is developed by top machine learning scientists and practicing doctors on decades of unparalleled precision medicine data and practice. GROQ's AI-powered longitudinal monitoring and treatment recommendation will help you reverse the signs and symptoms of aging, predict and prevent disease, and optimize your health. GROQ Health is the first and only app to prescribe clinically proven treatments tailored to your unique body."[5]

40.    Soon after learning of Quantiome's rebrand, in an effort to amicably resolve this dispute without litigation, Groq contacted Defendants via mail, email, and telephone to provide notice that Defendants' use of the word "Groq" infringes Groq's trademark rights and will cause or will likely cause customer confusion. Defendants, after months of

---

[1] https://web.archive.org/web/20211204195120/https://www.groqhealth.com/
[2] https://www.groqhealth.com/ (last visited April 19, 2023).
[3] https://web.archive.org/web/20210414080127/https://groqhealth.com/who-we-are/
[4] https://signup.groqhealth.com/early-access/
[5] https://www.linkedin.com/in/rfallahz/ ;
/web/20230419175509/https://www.linkedin.com/in/rfallahz/?original_referer=

delay, dismissed the idea that any customers would be confused by two technology companies with virtually identical names.

41. Instead of misappropriating the Groq name, Comite and Quantiome could have chosen any number of alternatives. Its decision—taken with obvious knowledge of Groq's market position, reputation and trademark rights—reflects a conscious choice to trade on Groq's positive reputation in the technology, artificial intelligence, and machine learning industries. Groq Health is a startup and, rather than earn its own reputation under its own brand, has decided to take a short cut by misappropriating Groq's goodwill.

    **D.**    **Customer confusion is likely**

42. Groq is an entirely fanciful designation for a company. It had no preexisting meaning prior to Mr. Ross's creation of the word.

43. Groq Health uses a mark identical to Groq's registered trademark, except for the addition of the word "Health."" This addition is a distinction without a difference: it does not eliminate the likelihood of confusion. The word "Health" could also suggest that Groq Health is a subsidiary, division, or partner of Groq, or that Groq endorses or licenses Groq Health's app. *See, e.g., Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 333 (2d Cir. 2020) (finding that alleged infringer failed to establish no likelihood of confusion between Black Ice and Midnight Black Ice Storm marks for automotive air fresheners) *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115-16 (2d Cir. 2009) (finding likelihood of confusion between Starbucks and Charbucks marks for coffee).

44. Groq Health uses the mark in connection with goods or services that are related to those of Groq. Both companies offer products or services that involve artificial intelligence and machine learning, which are technologies used for various purposes and applications, such as computer vision, natural language processing, and recommendation systems. Both companies also target customers in industries such as cloud computing, healthcare, and e-commerce, which are potential or actual users of artificial intelligence

and machine learning. Therefore, there is a reasonable possibility that consumers would encounter both companies' products or services in the same or similar markets, channels, or contexts, and would assume that they are affiliated or associated with each other. *See, e.g., Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961) (finding a likelihood of confusion between Polaroid and Polarad marks for electronic devices); *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463-64 (3d Cir. 1983) (finding a likelihood of confusion between Lapp and Lapp Insulator marks for electrical products).

45. As Groq Health expands its offerings and its use of the GROQ mark becomes more widespread, the abovementioned confusion will only be exacerbated.

46. The potential consumers of Groq Health's services are the same as, or similar to, the potential consumers of Groq. They include consumers seeking digital health platform that uses artificial intelligence services, small businesses seeking digital health platform that uses artificial intelligence services, and analysis of health care data. Given the clear overlap, these consumers are particularly susceptible to being confused by Groq Health's misappropriation of the Groq trademarks.

47. If Groq Health is not enjoined from infringing Groq's family of GROQ marks, Groq will suffer irreparable harm, and the goodwill that Groq has spent years cultivating will be eroded.

### IV.    CLAIMS FOR RELIEF
### Count 1: Trademark Infringement
### Under Lanham Act Section 32, 15 U.S.C. § 1114

48. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

49. The acts of Defendants described above constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

50. Plaintiff owns valid and protectable registered rights in the GROQ marks, certain of which are registered with the USPTO and are valid, subsisting, used in commerce, and inherently distinctive (the "Registered GROQ Marks").

51. Upon information and belief, Defendants had actual knowledge of Plaintiff's ownership and use of the Registered GROQ Marks prior to Defendants' adoption and use of the Registered GROQ Marks and/or confusingly similar variations of the Registered GROQ Marks in connection with the promotion, advertising, offering for sale, and sale of its products and services.

52. Plaintiff has not authorized Defendants to use the Registered GROQ Marks, and Defendants' use of the Registered GROQ Marks and/or confusingly similar variations of the Registered GROQ Marks has resulted in Defendants unfairly and unlawfully benefitting from Plaintiff's goodwill.

53. Defendants' unauthorized use and promotion of the Registered GROQ Marks and/or confusingly similar variations of the Registered GROQ Marks are causing confusion, and will likely continue to cause confusion, mistake, or deception on the part of customers as to the source, nature, and quality of the products Defendants are offering, constituting trademark infringement in violation of 15 U.S.C. § 1114.

54. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless Defendants are enjoined by the Court, Plaintiff will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Plaintiff has no adequate remedy at law.

55. On information and belief, Defendants have acted willfully to usurp Plaintiff's rights, and should be held liable for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a), and Defendants' profits due to the infringement.

**Count 2: False Designation of Origin**

**Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125 (a)(1)(A)**

56. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

57. In addition to its federal trademark registrations, Plaintiff owns and enjoys valid, enforceable and fully subsisting common law trademark rights in the GROQ Marks in New York and throughout the United States. The GROQ Marks have been and are used in commerce in the United States.

58. Defendants' use of the GROQ Marks and/or confusingly similar variations of the GROQ Marks in commerce constitutes false designations of origin, as it is likely to cause confusion, or to cause mistake, or to deceive consumers as to an affiliation, connection, or association between Plaintiff and Defendants, or as to the origin, sponsorship, or approval of Defendants' goods or services by Plaintiff.

59. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless the Court enjoins Defendants , Plaintiff will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Plaintiff has no adequate remedy at law.

60. Defendants' past and continued use of the GROQ Marks constitutes infringement of the common law family of GROQ marks in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

61. On information and belief, Defendants have acted willfully to usurp Plaintiff's rights, and should be held liable for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a), and Defendants' profits due to the infringement.

## COUNT 3:

## Common Law Trademark Infringement

62. Groq repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

63. Plaintiff owns and enjoys valid, enforceable and fully subsisting common law trademark rights in the GROQ Marks in New York and throughout the United States.

64. Defendants, through the conduct and violations described above, have engaged in, engage in, and propose to engage in trademark infringement under New York common law. Because of Defendant's violations, Plaintiff is entitled to relief as set forth below.

## COUNT 4: Injury To Business Reputation And Dilution
## New York General Business Law § 360-1

65. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

66. Groq seeks recovery from Groq Health for violating New York General Business Law § 360-1, *et. seq.*

67. Groq Health's unauthorized use of the GROQ Mark and/or confusingly similar variations of the GROQ Marks is likely to cause members of the public to believe, incorrectly, that Groq Health's products and services originate from, or have been authorized, sponsored, approved, or endorsed by Groq, or that Groq Health's businesses are otherwise connected to, sponsored by, or affiliated with Groq in some way; whereas, in fact, Groq does not approve of Groq Health's appropriation of its trademarks for Groq Health's products, services, or businesses.

68. As a result, Groq Health's unauthorized use of the GROQ Marks and/or confusingly similar variations of the GROQ Marks will lead to injury of Groq's business reputation and dilution by blurring the "GROQ" mark.

69. If such action on the part of Groq Health continues, Groq has suffered and will suffer irreparable harm of a continuing nature for which there is no adequate remedy at law and of an amount that has thus far not been determined.

70. Upon information and belief, Groq Health has obtained gains, profits, and advantages as a result of its wrongful acts in an amount thus far not determined.

## COUNT 5: Misappropriation And Unfair Competition
## Under New York Common Law

71. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

72. The GROQ Marks are distinct and significant, such that the use of the name "Groq" identifies Groq. Groq has an established reputation which is capable of protection.

73. Groq Health's unfair use of the GROQ Marks and/or confusingly similar variations of the GROQ Marks is likely to deceive consumers, and has in fact, actually deceived consumers, in that it is likely to cause members of the public to believe, incorrectly, that Groq Health's products and services originate from, or have been authorized, sponsored, approved, or endorsed by Groq, or that Groq Health's businesses are otherwise connected to, sponsored by, or affiliated with Groq in some way; whereas, in fact, Groq does not approve of Groq Health's appropriation of its trademarks for Groq Health's products, services, or businesses.

74. Groq Health, by virtue of its unfair use of the GROQ Marks and/or confusingly similar variations of the GROQ Marks, has violated society's notions of fair play and fundamental fairness.

75. The above-described acts and practices constitute actionable unfair competition under New York law.

## V.   PRAYER FOR RELIEF

WHEREFORE, Groq respectfully demands judgment:

76. That Groq Health and all those in active concert or participation with Groq Health (including, but not limited to, its officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns, and contracting parties) be temporarily, preliminarily, and then permanently enjoined and restrained from:

    i. using the "GROQ" mark, or any other logo, device, design, or word mark that is a colorable imitation of, or is similar to, the GROQ marks, or any of them, in connection with the advertising, distribution, marketing, offering for sale, or sale of any product or service neither originating from nor authorized by Groq;

    ii. representing in any manner or by any method whatsoever, that goods, services, or other products provided by Groq Health are sponsored, approved, authorized by or originate from Groq or otherwise taking any action likely to cause confusion, mistake or deception as to the origin, approval, sponsorship or certification of such goods, products, or services.

77. That Groq Health and all those in active concert or participation with Groq Health (including, but not limited to, its officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns, and contracting parties) take affirmative steps to dispel such false impressions that heretofore have been created by their use of the GROQ mark, including, but not limited to, recalling from any and all channels of distribution any and all advertising, marketing, or promotional material and the like, bearing or distributed under the GROQ mark, or any confusingly similar variations thereof.

78. That Groq Health, within thirty days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Groq's attorneys a written report under oath setting forth in detail the manner in which Groq Health has complied with the above-mentioned paragraphs 1 through 2.

79. That Groq Health account to Groq for its profits and any damages sustained by Groq, to the extent calculable, arising from the foregoing acts of trademark infringement, false designation of origin, unfair competition and deceptive acts and practices.

80. That, in accordance with such accounting, Groq be awarded judgment for three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117.

81. That Groq be awarded its reasonable costs and attorneys' fees and disbursements.

82. That Groq have such other and further relief as the Court may deem equitable.

## JURY DEMAND

Groq hereby demands a trial by jury on all issues so triable.

Date: September 20, 2023

Respectfully submitted,

ALLEN & OVERY LLP

Bijal V. Vakil (*pro hac vice* application forthcoming)
Bijal.Vakil@allenovery.com
William K. Wray Jr. (*pro hac vice* application forthcoming)
William.Wray@allenovery.com
Allen & Overy LLP
550 High Street
Palo Alto, CA 94301
Telephone (650) 388-1703
Facsimile: (650) 388-1699

By: */s/ Bradley Pensyl*
Bradley Pensyl
Bradley.Pensyl@AllenOvery.com
Ayyan Zubair
Ayyan.Zubair@allenovery.com
Allen & Overy LLP
1221 6th Ave
New York, NY 10020
Telephone: (212) 610-6304
Facsimile: (212) 610-6399

COUNSEL FOR GROQ, INC.