```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/27/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GROQ, INC., <br><br>                          Plaintiff, <br><br> -against- <br><br> GROQ HEALTH, INC., and FLORENCE D. COMITE, M.D., <br><br>                          Defendants. | 1:23-cv-08325-MKV <br><br> **OPINION AND ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS AND DENYING MOTION TO STRIKE** |

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Groq, Inc. ("Groq") filed this lawsuit asserting a claim under the Lanham Act for trademark infringement, and related claims, against Defendants Groq Health Inc., and Florence D. Comite, M.D. Defendants filed counterclaims against Groq and raised affirmative defenses. In particular, as pertinent here, Defendants assert two counterclaims for declaratory judgments to, in effect, direct the U.S. Patent and Trademark Office ("USPTO") to cancel or refuse a pending, intent-to-use trademark application filed by Groq to register the trademark "GROQHEALTH." Defendants also raise as an affirmative defense that Groq lacked a *bona fide* intent to use GROQHEALTH when it filed the application.

Groq moves to dismiss the aforementioned counterclaims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Groq argues that, pursuant to the Lanham Act, the USPTO, not courts, must decide trademark application disputes in the first instance. Groq also moves to strike Defendants' related affirmative defense pursuant to Federal Rule of Civil Procedure 12(f). For the reasons set forth below, the motion to dismiss is GRANTED and the motion to strike is DENIED.

1

## I.     BACKGROUND[1]

**A. Facts**

Plaintiff Groq, Inc. ("Groq") is an AI solutions company that develops semiconductor chips to run generative artificial intelligence models faster than conventional hardware. Counterclaims ¶ 21. Groq holds registered trademarks in the marks "groq" and "GROQ." *See* First Registered Trademark [ECF No. 35-1]; Second Registered Trademark [ECF No. 35-2]. The First Registered Trademark reflects that Groq began to use the mark in 2017. *See* First Registered Trademark.

In 2018, Defendant "Dr. Comite founded [a company that she named] Quantiome, Inc.," which later became Defendant Groq Health Inc. Ans. ¶ 33; *see* Counterclaims ¶ 11. According to Defendants, "Quantiome, Inc. ha[d] developed a precision medicine application intended to provide personalized recommendations to quantify and optimize health." Ans. ¶ 33. Dr. Comite engaged Fenwick & West LLP, which "filed an application to register QUANTIOME with the U.S. Patent and Trademark Office in February 2018." Ans. ¶ 35.

At some point thereafter, Dr. Comite changed the name of her company to Groq Health, Inc. *See* Ans. ¶ 33; Counterclaims ¶ 11. Plaintiff alleges that Dr. Comite "saw Groq's signage"

---

[1] The facts are taken from Defendants' First Amended Answer and Counterclaims [ECF No. 28 at 1–10 ("Ans."); ECF No. 28 at 10–27 ("Counterclaims")], and for purposes of this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Judd Burstein, P.C. v. Long*, 797 F. App'x 585, 587 (2d Cir. 2019); *Phoenix Companies, Inc. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 585 (S.D.N.Y. 2021) ("When evaluating a motion to dismiss counterclaims for failure to state a claim, a court 'must accept all well-pleaded facts as true and construe the answer and counterclaims in the light most favorable to the nonmoving party.'" (quoting *Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia*, 23 F. Supp. 2d 439, 445 (S.D.N.Y. 1998)). The Court also considers the application filed by Groq to register "GROQHEALTH" as its trademark [ECF No. 28-1 ("Application")], which Defendants attached to their First Amended Answer and Counterclaims, and Plaintiff's registered trademarks in "groq" and "GROQ" [ECF Nos. 35-1 ("First Registered Trademark"), 35-2 ("Second Registered Trademark")], which Groq submitted in connection with its motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *George Nelson Found. v. Modernica, Inc.*, 12 F. Supp. 3d 635, 643 (S.D.N.Y. 2014) (A party can "properly attach U.S. Patent and Trademark Office filings to a motion to dismiss"); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

in "Fenwick's Silicon Valley office [building]," where Groq also maintained an office, and "began to rebrand Quantiome as 'Groq Health'" in 2020 [ECF No. 1 ("Cmpl.") ¶¶ 36,[2] 37. Defendants maintain that Dr. Comite chose the new name for her own "very specific reasons." Counterclaims ¶ 14; *see id.* ¶¶ 14–19.

In June 2022, Groq sent Defendants "a cease and desist letter accusing Groq Health of trademark infringement." Counterclaims ¶ 25. In September 2022, Defendants responded that there was no likelihood of confusion because the parties were "engaged in completely different lines of business." Counterclaims ¶ 26.

In November 2022, Groq filed an application to register GROQHEALTH as a trademark on an intent-to-use basis. Counterclaims ¶ 30; *see* Application at 1, 5. The Application included a declaration from the Chief Legal Officer of Groq, who stated that Groq "has a *bona fide* intention to use the mark in commerce." Counterclaims ¶ 32; Application at 6. Defendants allege that "Groq's true intention in filing the [GROQHEALTH] Application was to strengthen its position in this litigation." Counterclaims ¶ 36.

B.  **Procedural History**

Groq initiated this lawsuit in September 2023 [ECF No. 1 ( "Cmpl.")]. Groq asserts claims for: (1) trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, Cmpl. ¶ 48–55; (2) false designation of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), *id.* ¶¶ 56–61; (3) "trademark infringement under New York

---

[2]

Cmpl. ¶ 36 (image cropped).

common law," *id.* ¶¶ 62–64; (4) injury to business reputation and dilution in violation of New York General Business Law § 360-1, *id.* ¶¶ 65–70; and (5) misappropriation and unfair competition under New York common law," *id.* ¶¶ 71–75.

Defendants filed an answer which raised affirmative defenses and asserted counterclaims [ECF No. 23]. Thereafter, Defendants filed their First Amended Answer and Counterclaims [ECF No. 28 at 1–10 ("Ans."); ECF No. 28 at 10–27 ("Counterclaims")].[3] In that pleading, Defendants assert three counterclaims for declaratory judgments that: (1) Defendants have not infringed the trademarks that Groq owns, *see* Counterclaims ¶¶ 39–44; (2) Groq has no *bona fide* intent to use the mark GROQHEALTH, for which Groq has applied for a registered trademark, and, therefore, the USPTO must "refuse registration" or Groq must "abandon" the Application, Counterclaims ¶¶ 55, 56; *see id.* ¶¶ 45–58; and (3) "[Groq's] pending application to register GROQHEALTH should be refused," Counterclaims ¶ 76; *see id.* ¶¶ 59–80.

With respect to the Second and Third Counterclaims (the only counterclaims at issue in the pending motion to dismiss), Defendants expressly invoke the Court's authority "under [Section 37 of the Lanham Act,] 15 U.S.C. § 1119," to "determine the right to registration" of a party to an action "involving a registered mark." Counterclaims ¶¶ 54, 75. In particular, Defendants assert in their pleading that the Court has authority to determine that Groq has "no valid right rights in the applied-for mark," and to direct the USPTO to refuse the pending Application, because Groq has filed this action involving its own "trademark registrations," and "there is a sufficient nexus between the . . . Application" Defendants seeks to cancel and the "registered marks." Counterclaims ¶¶ 53–55.

Defendants also assert a number of affirmative defenses. *See* Ans. at 8–10. Pertinent here,

---

[3] The Court cites "Ans." and "Counterclaims" separately because Defendants restart the numbering of the paragraphs.

4

Defendants' Second Affirmative Defense alleges that Plaintiff's claims against Defendants "are barred" because, "[f]or example," Groq "lacked a *bona fide* intent to use GROQHEALTH" when it filed the Application. Ans. at 8.

Groq moves to dismiss the Second and Third Counterclaims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and to strike the Second Affirmative Defense pursuant to Rule 12(f) [ECF Nos. 34, 35, 36 ("Mem."), 40]. Groq argues that the Lanham Act does not empower a federal district court to adjudicate a pending trademark application, in the first instance, and direct the USPTO to cancel such an application or refuse to register a mark. *See* Mem. at 1–2, 8–12. Groq further argues that, "[b]ecause the Lanham Act does not establish a judicial cause of action for cancellation/refusal of pending trademark applications, Defendants ask the Court to intervene in pending PTO proceedings by issuing a declaratory judgment," but the Court lacks jurisdiction under the Declaratory Judgment Act. Mem. at 7, 13–16. In particular, Groq contends that there is no actual case or controversy with respect to the Second and Third Counterclaims because the pending GROQHEALTH Application could remain pending for years, the mark may never register, and Groq may never use it. *See* Mem. at 14.

Defendants oppose the motion to dismiss and strike [ECF Nos. 38 ("Opp."), 39]. They rely heavily on the recent decision by a divided panel of the Ninth Circuit in *BBK Tobacco & Foods LLP v. Central Coast Agriculture, Inc.*, 97 F.4th 668 (9th Cir. 2024) ("*BKK*"). In that appeal, the majority held that the owner of a registered trademark who sued a defendant for infringing its registered trademark could also seek an order canceling the defendant's pending application to register the allegedly infringing mark. *See BKK*, 97 F.4th at 671 ("Permitting a district court to adjudicate trademark applications when an action already involves a registered mark advances the interest of resolving all registration disputes in a single action.").

5

## II. LEGAL STANDARDS

### A. Lack of Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction has the burden of showing that it exists. *Id.* Pertinent here, the Second Circuit has explained that the Declaratory Judgment Act "does not create an independent basis for federal subject-matter jurisdiction." *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 113 (2d Cir. 2024); *see Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950).

### B. Failure To State a Claim

"When evaluating a motion to dismiss counterclaims for failure to state a claim, a court 'must accept all well-pleaded facts as true and construe the answer and counterclaims in the light most favorable to the nonmoving party.'" *Phoenix Companies, Inc. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 585 (S.D.N.Y. 2021) (quoting *Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia*, 23 F. Supp. 2d 439, 445 (S.D.N.Y. 1998)); *see Judd Burstein, P.C. v. Long*, 797 F. App'x 585, 587 (2d Cir. 2019).

### C. Motion To Strike

Pursuant to Rule 12(f), a court may strike from an answer "any insufficient defense." *GEOMC Co., Ltd. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 95 (2d Cir. 2019); *see* Fed. R. Civ. P. 12(f). Traditionally, however, a motion to strike an affirmative defense for legal insufficiency "is not favored." *William Z. Salcer, Panfeld, Edelman et al. v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1985), *vacated on other grounds*, 478 U.S. 1015 (1986); *see Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("courts should not tamper with

the pleadings unless there is a strong reason for so doing"); *Rich v. Miller*, 634 F. Supp. 3d 66, 71 (S.D.N.Y. 2022) ("Courts disfavor motions to strike").

### III.   ANALYSIS

**A. The Lanham Act Does Not Authorize the Court To Direct the USPTO To Cancel or Refuse a Pending Trademark Application.**

Defendants contend that this Court has the authority to adjudicate a pending application to register a trademark in the first instance and direct the USPTO to cancel or refuse the application. The text of the Lanham Act plainly contradicts that contention and, therefore, requires dismissal of Defendants' counterclaims. Section 37 of the Lanham Act, 15 U.S.C. § 1119, provides:

> In any action involving a *registered* mark, the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and *otherwise rectify the register* with respect to the registrations of any party to the action.

15 U.S.C. § 1119 (emphases added).

The crucial word is "registered." *Id.*; *see Adidas America, Inc. v. Thom Browne Inc.*, 599 F. Supp. 3d 151, 163 (S.D.N.Y. 2022) ("the key term . . . is 'registered'"). The text plainly limits a court's statutory authority to disputes about "a registered mark." 15 U.S.C. § 1119; *see Universal Sewing Mach. Co. v. Standard Sewing Equip. Corp.*, 185 F. Supp. 257, 260 (S.D.N.Y. 1960) ("§ 37 assumes a properly instituted and otherwise jurisdictionally supportable action involving a registered mark"). Indeed, the Lanham Act specifically authorizes a court to take certain actions that necessarily presuppose the existence of a registered mark. Especially pertinent here, it expressly provides that a court may "order the cancelation of *registrations*," *id.* (emphasis added), in contrast with *pending* trademark *applications*. *See United States v. Tappin*, 205 F.3d 536, 540 (2d Cir. 2000) ("Applying the rule of statutory construction "*inclusio unius est exclusio alterius*"— that to express or include one thing implies the exclusion of the other, or of the alternative . . . .").

7

The Act also expressly authorizes a court to "restore canceled *registrations*," 15 U.S.C. § 1119 (emphasis added), which presupposes that the USPTO has previously registered a mark that was, thereafter, canceled.

Similarly crucial, the text provides that a court may "*otherwise rectify the register*." 15 U.S.C. § 1119 (emphasis added). The phrase "*rectify* the register" clearly presupposes that the USPTO has previously made registration decisions which a court thereafter deems incorrect or inadequate to establish the respective rights of various parties. *Id.* (emphasis added). Moreover, the word "*otherwise*" implies that the preceding, specifically-authorized actions by a court are all examples of ways to "rectify the register" to cure previous, incorrect registration decisions by the USPTO. *Id.*; *see BBK*, 97 F.4th at 676 (Bumatay, J., dissenting).

The Supreme Court has repeatedly instructed lower federal courts to interpret statutory text in context to avoid "giving unintended breadth to the Acts of Congress." *Yates v. United States*, 574 U.S. 528, 543 (2015) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). Here, the isolated phrase "the court may determine the right to registration" could be read broadly standing by itself; however, when read in the context, the phrase is limited by surrounding language that makes clear the court's authority is only to "*rectify* the register." 15 U.S.C. § 1119 (emphasis added).[4] Thus, applying common sense and basic principles of statutory interpretation, the text alone makes plain that this Court has no authority to decide, in the first instance, that a pending application to register a trademark should be canceled or refused by the USPTO.

The broader statutory context reinforces the plain meaning of the particular text. *See Puello*

---

[4] There is no great mystery, moreover, how to interpret the Court's authority to "determine the right to registration" without arrogating to itself the authority to adjudicate patent applications in the first instance. 15 U.S.C. § 1119. This phrase simply refers to a federal court's ordinary "authority to adjudicate the ownership, scope, priority, and use of trademarks" in ordinary trademark disputes that do not ordinarily involve pending applications. *BBK*, 97 F.4th at 674–75 (Bumatay, J., dissenting).

*v. Bureau of Citizenship & Immigr. Servs.*, 511 F.3d 324, 327 (2d Cir. 2007) ("In ascertaining the plain meaning of a statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." (quoting *K Mart Corp. v. Cartier*, 486 U.S. 281, 291 (1988)). Other provisions of the Lanham Act prescribe a comprehensive process for the USPTO to make trademark registration decisions in the first instance. *See* 15 U.S.C. §§ 1051, 1062. The statute provides that a "request [for] registration" of a trademark *begins* with "filing in the Patent and Trademark Office an application . . . ." 15 U.S.C. § 1051(A)(1). Upon receipt of the application, the USPTO "shall" undertake "an examination" and either "shall cause the mark to be published" or "shall notify the applicant" of reasons for refusal and give the applicant an opportunity to "reply or amend the application, which shall then be reexamined." 15 U.S.C. §§ 1062(a), 1062(b)(1). This process "may be repeated until the examiner finally refuses registration of the mark or the application is abandoned." 15 U.S.C. § 1062(b)(1). These statutory provisions do not contemplate any role for federal courts in this application process.

Furthermore, Congress created a procedure for "[a]ny person who believes that he would be damaged by the registration of a mark" to "file an opposition in the Patent and Trademark Office." 15 U.S.C. § 1063(a). The Lanham Act further provides that, after the USPTO makes a final decision about an application, "[a]n appeal may be taken to the Trademark Trial and Appeal Board." 15 U.S.C. § 1070. The statute provides that, thereafter, a party can seek review by a federal court. *See* 15 U.S.C. § 1071.

As explained above, Defendants' argument that this Court has the authority to adjudicate the still-pending Application filed by Groq rests chiefly on the recent decision of the Ninth Circuit in *BBK Tobacco & Foods LLP v. Central Coast Agriculture, Inc.*, 97 F.4th 668 (9th Cir. 2024). In that appeal, the majority held that "when an action involves a registered trademark, a district court

9

has jurisdiction to consider challenges to the trademark applications of parties to the action." *Id.* at 670. The majority read the phrase "the court may determine the right to registration" broadly, stressing that "[p]ermitting a district court to adjudicate trademark applications . . . advances the interest of resolving all registration disputes in a single action." *Id.* at 671.

This Court, however, is not bound by the decision of the Ninth Circuit and, indeed, may not "simply accept[] the interpretation of another circuit." *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (internal quotation marks and citation omitted); *see id.* ("until the Supreme Court speaks, the federal circuit courts are under duties to arrive at their own determinations of the merits of federal questions presented to them"). Respectfully, in this Court's view, the decision of the Ninth Circuit prioritizes "interests in efficiency" over the most faithful and natural interpretation of the statutory text. *BBK*, 97 F.4th at 671. The Second Circuit and the Supreme Court, by contrast, have instructed that this Court "*must* give effect to the text's plain meaning." *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 57 (2d Cir. 2021) (emphasis added); *see Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (the "inquiry must cease" where, as here, the pertinent statutory text has a plain meaning that is consistent with the statutory scheme).

Interpreting the pertinent text, courts in this Circuit and throughout the country have concluded, without much difficulty, that "Section 37 is inapplicable to [a] pending trademark application." *GMA Accessories, Inc. v. Idea Nuova, Inc.*, 157 F. Supp. 2d 234, 241 (S.D.N.Y. 2000); *see Adidas*, 599 F. Supp. 3d at 163; *Khaled v. Bordenave*, No. 18-cv-5187 (PAE), 2019 WL 1894321, at *4 (S.D.N.Y. Apr. 29, 2019) (explaining that "the Lanham Act empowers courts to issue cancellations only of registered trademarks, not pending applications" and noting that other courts "have rejected the argument that a district court can interfere with or direct the rejection of a pending trademark application"); *Kohler Co. v. Bold International FZCO*, 422 F.

Supp. 3d 681, 739 (E.D.N.Y. 2018); *Truck-Lite Co., LLC v. Grote Indus., Inc.*, No. 18-cv-599-JLS-MJR, 2021 WL 8322467, at *11 (W.D.N.Y. Sept. 17, 2021) ("There is no cognizable claim to cancel an application that has not matured into a registration"); *Zany Toys, LLC v. Pearl Enters., LLC*, 2015 WL 404644, at*5 (D.N.J. Jan. 28, 2015); *D.B.C. Corp. v. Nucita Venezolana, C.A.*, 464 F. Supp. 3d 1323, 1331 (S.D. Fla. 2020) ("Interpreting section 1119, courts nationwide have generally held that they cannot preempt the PTO and cancel a trademark application, as doing so infringes upon the PTO's primary authority to adjudicate such applications in the first instance."); *Johnny Blastoff Inc. v. L.A. Rams Football Co.*, 1998 WL 766703, at *1 (W.D. Wis. June 24, 1998), *aff'd*, 188 F.3d 427 (7th Cir. 1999).

This Court joins the consensus, in this Circuit and elsewhere, that the Lanham Act does not empower a federal district court to adjudicate a pending application to register a trademark in the first instance and direct the USPTO to cancel or refuse the application. The Court also observes that Defendants seek to apply the holding of *BBK* beyond the facts of that case. In *BBK*, the owner of a registered trademark sued a defendant for infringement and sought to cancel the defendant's pending applications to register allegedly infringing marks. *See BBK*, 97 F.4th at 669. As such, the entire action, including the plaintiff's "petition to invalidate several of [the defendant's] trademark applications" concerned the plaintiff's registered trademark. In this case, by contrast, Defendants, who do not own a registered trademark in "Groq Health," seek to cancel the pending GROQHEALTH Application.

Defendants contend that the Court should entertain their counterclaims because there is a "sufficient nexus" between the claims Groq asserts in connection with its registered marks and Defendants' request to cancel the Application. Opp. at 13; Counterclaims ¶ 53. They principally

cite a report and recommendation that was never adopted.[5] *See Somera Cap. Mgmt., LLC v. Somera Rd., Inc.*, No. 19-cv-8291 (GWG), 2020 WL 2506352 (S.D.N.Y. May 15, 2020) (report and recommendation). That opinion is not binding on this Court and is distinguishable in any event. *See Adidas*, 599 F. Supp. 3d at 163 (distinguishing *Somera*).

In *Somera*, the defendant filed counterclaims seeking cancellation of both the plaintiff's registered mark and its pending applications for similar marks. *See id.*, at *3. The magistrate judge recommended denying a motion to dismiss the counterclaims related to the applications because of the close nexus to the registered mark, which was also being challenged. *See id.*, at *6. Here, Defendants' Second and Third Counterclaims do not involve any registered mark. Moreover, Defendants are not simultaneously challenging a registered mark. Indeed, Defendants maintain that the registered trademarks Groq currently owns are not similar to the "Groq Health" mark Defendants use and contend is confusingly similar to the GROQHEALTH mark for which Groq has filed the pending Application.

Section 37 of the Lanham Act gives federal courts authority in disputes about "registered" trademarks. 15 U.S.C. § 1119. Defendants' Second and Third Counterclaims do not "involv[e] a registered mark," *id.*, and "Section 37 is inapplicable to [a] pending trademark application," *GMA Accessories*, 157 F. Supp. 2d at 241; *see Adidas*, 599 F. Supp. 3d at 163; *Khaled*, 2019 WL 1894321, at *4. As such, the Court lacks authority to grant Defendants the relief they request with respect to the Application, and the Second and Third Counterclaims must be dismissed.[6]

---

[5] It appears that objections to were filed, but the parties settled before the district judge ruled on the objections [19-cv-8291, ECF Nos. 42, 43, 44, 53, 61, 62].

[6] There remains a question whether the claims are properly dismissed pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, or Rule 12(b)(6), for failure to state a claim. Groq argues that the Court lacks "jurisdiction" over the Second and Third Counterclaims. Mem. at 8, 10. Indeed, a number of district courts have expressly concluded that "a court lacks subject matter jurisdiction to cancel a pending trademark application that has yet to mature into a registration," *Theia Techs. LLC v. Theia Grp., Inc*, 2021 WL 291313, at *36 (E.D. Pa. Jan. 28, 2021); *see ALK 2, LLC v. K2 Marine, Inc.*, 647 F. Supp. 3d 1253, 1261 (M.D. Ala. 2022); *ESR Performance Corp. v. JVMAX, Inc.*, 2019 WL

## B. The Declaratory Judgment Act Does Not Authorize Relief.

Defendants, "implicitly acknowledge[]" that the Lanham Act does not provide a cause of action for canceling or refusing a pending trademark application by dressing up their Second and Third Counterclaims as "simple" claims for declaratory judgment. *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012). However, "a declaratory judgment relies on a valid legal predicate." *Id.* As explained above, the Lanham Act does not authorize a federal district court to adjudicate a pending trademark application, in the first instance, and direct the USPTO to cancel or refuse that application. As such, the Declaratory Judgment Act does not authorize the Court to issue an order declaring that, pursuant to the Lanham Act, the Application "should be refused" or otherwise purporting to declare the rights of the parties with respect to the Application. Counterclaims ¶ 76; *see id.* ¶ 56; *Chevron*, 667 F.3d at 244; *see also Sunvestment Energy Grp. NY 64 LLC*, 116 F.4th at 113 (holding that the DJA "does not create an independent basis for federal subject-matter jurisdiction"); *Gmurzynska v. Hutton*, 355 F.3d 206, 209 (2d Cir. 2004) (affirming dismissal of DJA claim where pleading "d[id] not state a claim for violation of the Lanham Act"). Defendants' Second and Third Counterclaims are therefore dismissed.

## C. The Court Declines To Strike the Second Affirmative Defense.

Groq argues that the Court should strike Defendants' Second Affirmative Defense "[f]or

---

13082967, at *3 (M.D. Fla. May 7, 2019). The Second Circuit has admonished district courts in this Circuit to "be especially careful to distinguish" between "statutory limitations that are not strictly jurisdictional" and a lack of subject matter jurisdiction. *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1076 (2d Cir. 2021). In particular, the Second Circuit explained, "[t]he Supreme Court has instructed that 'when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.'" *Id.* (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006)). Here, Defendants invoke a federal statute, pursuant to which federal courts have subject matter jurisdiction, but their claims fall squarely outside of the circumstances in which the statute authorizes a court to act. Because Section 37 of the Lanham Act expressly describes what a "court may" do, the requirement of a "registered mark" may reflect a statutory limitation on coverage that Congress *does* rank as jurisdictional. 15 U.S.C. § 1119; *see Green*, 16 F.4th at 1076; *Arbaugh*, 546 U.S. at 516. Alternatively, Defendants fail to allege an element of a claim for relief under Section 37. Either way, Defendants' Second and Third Counterclaims must be dismissed.

13

the same reasons" the Court dismisses the Second and Third Counterclaims. Mem. at 19. The Second Affirmative Defense asserts that Plaintiff's claims against Defendants "are barred" because, "[f]or example," Groq "lacked a *bona fide* intent to use GROQHEALTH" when it filed the Application. Ans. at 8. The Court declines to strike the defense.

"The court may strike from a pleading an insufficient defense." Fed. R. Civ. P. 12(f). However, in ruling on a motion to strike, the Court has "discretion." *Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 423 (S.D.N.Y. 2019). The Second Circuit has explained that a plaintiff moving to strike an affirmative defense for legal insufficiency must show: (i) "there is no question of fact which might allow the defense" to meet the plausibility standard applied to pleadings under *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); (ii) "there is no question of law which might allow the defense to succeed"; and (iii) "the plaintiff would be prejudiced by inclusion of the defense." *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 95–96 (2d Cir. 2019). Motions to strike are generally disfavored. *See Orientview Techs. LLC v. Seven For All Mankind, LLC*, No. 13-cv-538 (PAE), 2013 WL 4016302, at *3 (S.D.N.Y. Aug. 7, 2013). Moreover, "a motion to strike should not be used as an opportunity for the determination of disputed, substantial questions . . . ." *Rich v. Miller*, 634 F. Supp. 3d 66, 72 (S.D.N.Y. 2022) (quoting *E.E.O.C. v. Kelley Drye & Warren, LLP*, 2011 WL 3163443, at *2 (S.D.N.Y. July 25, 2011); *see Cadet v. All. Nursing Staffing of New York, Inc.*, No. 21-cv-3994 (KPF), 2023 WL 3872574, at *2 (S.D.N.Y. Jan. 6, 2023) ("not a vehicle through which factual disputes are to be resolved").

Defendants maintain that they have not infringed the Groq trademarks. In particular, they allege that there is no likelihood of confusion between "Groq" and "Groq Health" because the parties are "engaged in completely different lines of business." Counterclaims ¶ 26. Defendants further allege that, although Groq has filed an application to register GROQHEALTH, Groq did

so with no *bona fide* intention to use the mark, merely to strengthen its position in this litigation." Counterclaims ¶ 36. In defending against Plaintiff's claims, Defendants are entitled to press their arguments that Groq, in fact, has no *bona fide* intention of using GROQHEALTH or otherwise engaging in healthcare applications. Accordingly, the Court declines to strike Defendants' Second Affirmative Defense.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Defendants' Second and Third Counterclaims is GRANTED, and its motion to strike Defendants' Second Affirmative Defense is DENIED. The Clerk of Court respectfully is requested to terminate the motion pending at docket entry 34. The Court will address the status of discovery in a separate order.

**SO ORDERED.**

**Date: March 27, 2025**
**New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**

15